IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **A.D.**, *et al.*, | Case No. 1:14-cv-10106 |
| v. | Hon. Matthew F. Kennelly |
| **Credit One Bank, N.A.** | |

**Plaintiff's Motion to Reconsider
Order Granting Motion to Compel Arbitration
and in the Alternative to Certify for Interlocutory Review**

Plaintiff A.D. respectfully moves the Court to reconsider its earlier ruling granting Defendant' motion to compel arbitration (dkt. 118). In the alternative, Plaintiff asks that the Court certify the issue of what knowledge a non-signatory to an arbitration agreement must have under the direct benefits estoppel theory for interlocutory review.

**1. The Ruling Finding Knowing Acceptance of Direct Benefit by Plaintiff Should be Reconsidered**

The authority of a district judge to reconsider a previous ruling in the same litigation is governed by the doctrine of the law of the case, which authorizes such reconsideration if there is a compelling reason. *Agostini v. Felton*, 521 U.S. 203, 236 (1997); *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816-17 (1988); *Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005). Not to reconsider "would condemn the parties to the unedifying prospect of continued litigation when they knew that a possibly critical ruling was in error and, unless it became moot in the course of the proceedings,

would compel a reversal of the final judgment at the end of the case." *Santamarina v. Sears*, 466 F.3d 570, 571-72 (7th Cir. 2006). The District Court is not limited by the strictures of Rule 60, which "applies only to a final judgment, order, or proceeding . . . [and] it does not limit a district court's discretion to reconsider an interlocutory judgment or order at any time prior to final judgment." *Mintz v. Caterpillar, Inc.*, 788 F.3d 673, 679 (7th Cir. 2015).

The direct-benefit estoppel theory used by the Court to compel arbitration requires the non-signatory plaintiff (1) direct benefitted from the contract by asserting claims that come from the contract and (2) knowingly obtained such a benefit. Because neither are present here, the Court should reconsider and deny Defendant's motion to compel.

A stranger to a contract may nevertheless be bound by its terms "if [she] knowingly seeks the benefits of the contract containing the arbitration clause." *Zurich Am. Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 688 (7th Cir. 2005). In every prior case finding direct benefits estoppel, "the non-signatories sought to enforce one provision of a contract while seeking to avoid enforcement of the arbitration clause." *Pereira v. Santander Consumer USA, Inc.*, No. 11-cv-8987, 2012 U.S. Dist. LEXIS 45627, at *3 (N.D. Ill. Apr. 2, 2012) (Kocoras, J.); see also *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 362 (5th Cir. 2003) (in cases where courts seriously consider applying direct benefits estoppel, "the nonsignatory had brought suit against a signatory premised in part upon the agreement"); *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) ("these estoppel cases all involve claims which are integrally related to the contract containing the arbitration clause").

"The touchstone of this form of estoppel thus is whether the non-signatory has brought suit against the signatory premised upon the agreement that contains the arbitration clause at issue, thus seeking the agreement's direct benefits." *Transatlantic Reinsurance Co. v. Nat'l Indem. Co.*, No. 14-cv-1535, 2014 U.S. Dist. LEXIS 85533, at *12 (N.D. Ill. June 26, 2014) (Gettleman, J.) (quoting *Gersten v. Intrinsic Techs., LLP*, 442 F. Supp. 2d 573, 579 (N.D.Ill. 2006) (Filip, J.)). Further, "it is not enough merely that the claims at issue have some logical nexus to the agreement, or that plaintiff seeks a result that indirectly relates to or benefits from the existence of the agreement." *Gersten*, 442 F.Supp.2d at 579.

It is clear that the "benefit" in direct benefits estoppel requires that the non-signatory's claims asserted in the litigation are seeking to obtain a benefit, not simply that at some point the non-signatory obtained some benefit under the contract. See, e.g., *Pereira*, 2012 U.S. Dist. LEXIS 45627, at *3 (N.D. Ill. Apr. 2, 2012) (finding no direct benefit when spouse of borrower drove car financed by the loan extended by defendant).

Here, Plaintiff's TCPA claim in no way relates or springs from the credit card agreement between her mother and Defendant. Quite the opposite: her claim is premised on the idea that she never gave her prior express consent to receive any communications from Defendant, let alone three dozen robocalls to her personal cell phone.

Second, the authorities both in this circuit and elsewhere are uniform in requiring a *knowing* exploitation of the contract, which in every case had some evidence that the non-party knew of the arbitration term and the other terms of the contract. See, e.g., *Everett v. Paul Davis Restoration, Inc.*, 771 F.3d 380, 384 (7th Cir. 2014) (spouse of

3

signatory was co-owner and operator of franchise under agreement with defendant and both spouses "colluded to avoid the franchise agreement in order to leave [plaintiff] free from the contractual obligations contained in it."); *Wood v. PennTex Res., L.P.*, 458 F. Supp. 2d 355, 370 (S.D. Tex. 2006) (non-signatory participated in negotiating contract, was named in the agreement, and was involved in its execution and performance).

Here, in sharp contrast, there is no evidence at all that Plaintiff had any knowledge of the terms of the agreement between her mother and Defendant, let alone the arbitration clause, or understood (or should have understood) that accepting a $5 smoothie when she was fourteen years old would result in depriving her of her constitutional right to a jury trial nearly four years later. Certainly Plaintiff knew that banks generally don't make a business of extending credit without expecting to be repaid. But nothing in the record shows that Plaintiff had actual or constructive knowledge of the agreement's ancillary terms such as caller ID capture, the broad definition of "authorized user," and especially the sweeping arbitration clause. See *Scheurer v. Fromm Family Foods LLC*, No. 15-cv-770, 2016 U.S. Dist. LEXIS 109773, at *5 (W.D. Wis. Aug. 18, 2016) (refusing to bind non-signatory to arbitration clause where no evidence that she relied on or knew of the terms of the contract).

The Court respectfully should reconsider its conclusion that Plaintiff knowingly and directly benefited from the contract either in raising TCPA claims in this lawsuit or using her mother's credit card to pay for her mother's pre-order while she was parking the family car at the mall. The application of this equitable doctrine goes too far here and should be reconsidered, especially in light of the authorities cited above and in Plaintiff's opposition papers.

### 2. The Issue of Knowing Direct Benefit Should be Certified for Interlocutory Appeal in the Alternative

The statutory exception to the general rule requiring finality before an appeal may be taken has been described as "[t]he most explicitly flexible provision for interlocutory appeals." 16 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE, §3929, 430 (2d. ed. 1996). It is a bifurcated discretionary approach, requiring permission of both the district court and court of appeals through application of specific statutory criteria, is unique in that it grants appellate gatekeeper status upon the trial court. See *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995) ("Congress thus chose to confer on district courts first line discretion to allow interlocutory appeals.").

Here, there is a compelling need for the Seventh Circuit to clarify the standard for equitable estoppel under the direct benefit theory, particularly in the context of consumer arbitration. As the Circuit Judge Cudahy wrote, "There is a relative dearth of precedent regarding direct benefits estoppel" and approved of the district court's reliance on cases from the Second Circuit. *Everett v. Paul Davis Restoration, Inc.*, 771 F.3d 380, 384 (7th Cir. 2014). The doctrine is, like most equitable doctrines, intensely fact-heavy and there are few decisions even at the district court level which explore the contours of "direct benefit" in a consumer context and none from the Court of Appeals. See *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir. 1999) (direct benefit estoppel is fact specific and differ with the circumstances of each case) (quoting *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 777-78 (2d Cir. 1995)). Given that the fundamental right to a jury trial is surrendered when a dispute is sent to arbitration are among the most basic to our constitution — the "lungs

of liberty" as John Adams put it in 1774 — trial courts should be afforded every guidance possible as to the proper limits of the doctrine.

## Conclusion

For these reasons, the Court should reconsider its conclusion that Plaintiff knowingly accepted a direct benefit of the credit card agreement between her mother and Defendant, or in the alternative certify the issue of the intent required to compel a non-signatory to a contract's arbitration term for interlocutory appeal.

Respectfully submitted this 2nd day of September, 2016,

*/s/ Mark Ankcorn*

California & Federal Bar No. 166871

*mark@ankcorn.com*
ANKCORN LAW FIRM, PC
1608 S. Ashland Ave. #92015
Chicago, Illinois 60608-2013

11622 El Camino Real, Suite 100
Del Mar, California 92130
(619) 870-0600 phone
(619) 684-3541 fax

*/s/ Roberto Robledo*

California & Federal Bar No. 260041

*roberto@robertorobledo.com*
LAW OFFICES OF ROBERTO ROBLEDO
9845 Erma Road, Suite 300
San Diego, California 92131
(619) 500-6683 phone
(619) 810-2980 fax

Attorneys for Plaintiff

**Certificate of Service**

      I hereby certify that on September 2, 2016, I electronically filed the above and foregoing notice and motion through the Court's CM/ECF System, which perfected service on all counsel of record.

<em>/s/ Mark Ankcorn</em>